**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

| | |
|---|---|
| In re:<br><br>PLATINUM CORRAL, L.L.C.,<br><br>Debtor. | Case No. 21-00833-5-JNC<br><br>Chapter 11 |

**STIPULATION FOR USE OF CASH COLLATERAL, PROVIDING ADEQUATE PROTECTION, AND GRANTING LIMITED RELIEF FROM THE AUTOMATIC STAY**

This *Stipulation For Use of Cash Collateral, Providing Adequate Protection, and Granting Limited Relief From the Automatic Stay* (this "Stipulation") is entered into by and between Debtor Platinum Corral, L.L.C. ("Debtor") and Secured Creditor Pacific Premier Bank ("Lender") with reference to the following facts:

**RECITALS**

A. Pursuant to an Equipment Loan and Security Agreement dated as of December 20, 2017 (as has been or may be amended, supplemented, replaced, restated or otherwise modified, the "Loan 1 Agreement") between Debtor and Lender, Lender agreed to make and did make a loan to Debtor in the maximum principal amount of $16,200,000 (the "Loan 1") in connection with Debtor's operation of twenty-eight (28) Golden Corral restaurants.

B. The Loan 1 is also evidenced by, among other things, a Promissory Note dated as of December 20, 2017 (as has been or may be amended, supplemented, replaced, restated or otherwise modified, the "Promissory Note 1") in the original principal amount of $16,200,000, payable by Debtor to the order of Lender.

C.      Pursuant to an Equipment Loan and Security Agreement dated as of September 16, 2019 (as has been or may be amended, supplemented, replaced, restated or otherwise modified, the "Loan 2 Agreement" and together with the Loan 1 Agreement, the "Loan Agreements") between Debtor and Lender, Lender agreed to make a loan to Debtor in the maximum principal amount of $2,000,000 (the "Loan 2" and together with the Loan 1, the "Loans") in connection with Debtor's operation of twenty-eight (28) Golden Corral restaurants.

D.      The Loan 2 is also evidenced by, among other things, a Multiple Advance Equipment Promissory Note dated as of September 16, 2019 in the original principal amount of $2,000,000, payable by Debtor to the order of Lender (as has been or may be amended, supplemented, replaced, restated or otherwise modified, the "Promissory Note 2" and together with the Promissory Note 1, the "Promissory Notes").

E.      Under each Loan Agreement, to secure each Loan, Debtor granted Lender a security interest in all of Debtor's personal property assets, as described in the Loan Agreements (the "Pre-Petition Collateral").  Pursuant to that certain Cross-Collateralization and Cross Default Agreement dated as of September 16, 2019 made by Debtor in favor of Lender, the Loans were cross-collateralized so that all of the Pre-Petition Collateral secures both Loans, and the Loans were cross-defaulted, so that a default under either Loan is also a default under the other Loan. Lender perfected its security interest in the Pre-Petition Collateral by filing a UCC-1 Financing Statement with the North Carolina Secretary of State on December 19, 2017, which bears Instrument No. 20170126993A and a UCC-1 Financing Statement with the North Carolina Secretary of State on September 10, 2019, which bears Instrument No. 20190096911K (collectively, the "Financing Statements").

F.      The Debtor and Lender are also parties to an April 1, 2020 Temporary Modification Agreement, an October 1, 2020 Amended Temporary Modification Agreement, an October 1, 2020 Second Amended Temporary Modification, and an April 6, 2021 Amendment to Second Amended Temporary Modification Agreement (collectively, the "Modification Agreements") modifying the Loans pursuant to which, among other things, (i) all payments on the Loans between and including April, 2020 and September, 2020 were deferred, (ii) all principal payments on the Loans between and including October, 2020 and December, 2020 were deferred, (iii) all payments on the Loans between and including January, 2021 and March, 2021 were and are deferred, (iv) all principal payments on the Loans between and including April, 2021 and October, 2021 are deferred, (v) beginning with the November, 2021 payments on the Loans, the Debtor is required to make monthly payment on the Loans in the aggregate amount of $100,000 per month, to be allocated between the Loans in Lender's sole and absolute discretion, to be applied first to interest and then principal, (vi) for each calendar year beginning with the year January 1, 2020 through December 31, 2020, the Debtor shall make additional principal payments on the Loans equal to 65% of the Debtor's annual EBITDA exceeding $2,000,000, and (vii) notwithstanding anything to the contrary in the Promissory Notes, the maturity of Loan 2 shall be June 1, 2024 and the maturity of Loan 1 shall be June 10, 2024, at which times all outstanding amounts under the Loans shall be due and payable in full.

G.      The Loan Agreements, the Promissory Notes, the Financing Statements, the Modification Agreements, all written amendments, modifications or supplements to any of the foregoing, and all documents relating to any of the foregoing or to the Loans are hereinafter referred to collectively as the "Loan Documents".

H.     Lender has fulfilled all of its obligations pursuant to the terms of the Loan Documents except those that have been waived or excused.

I.     The Debtor is in default under the Loan Documents in that, among other things, the Debtor failed to achieve the required Post Compensation Consolidated FCCR and the Pre-Compensation Consolidated FCCR (both as defined in the Loan Documents) for the twelve months ended June 30, 2020 (the "Existing Events of Default").

J.     The Debtor is a franchisee of Golden Corral restaurants at the 28 locations reflected on **Exhibit A** hereto (the "Locations").  **Exhibit A** also reflects which Locations are currently open and operating and which Locations are currently closed and not operating.  With respect to those Locations that are currently closed and not operating, **Exhibit A** also reflects two that Debtor intends to open.  Moreover, prior to the Petition Date (defined below), Debtor and the respective landlords mutually terminated the leases for the following closed Locations on **Exhibit A** (collectively, the "Terminated Locations"): Winchester (15), Elizabethtown (16), Lancaster (24), Chillicothe (25), and Reidsville (26).

K.     As of April 9, 2021, the outstanding principal balance of Loan 1 and accrued, unpaid interest on Loan 1 was $14,194,598.93, comprised of principal of $13,976,908.58, and accrued, unpaid interest of $217,690.35, and the outstanding principal balance of Loan 2 and accrued, unpaid interest on Loan 2 was $2,074,515.73, comprised of principal of $2,043,584.94, and accrued, unpaid interest of $30,930.79.  Lender's attorneys' fees, costs and expenses through April 5, 2021 are $80,187.10.  The foregoing amounts are exclusive of attorneys' fees, costs and

expenses accruing from and after April 6, 2021, and the other fees, costs, and expenses owing to Lender and provided for under the Loan Documents, accruing through April 9, 2021 (all of the foregoing collectively, the "Pre-Petition Obligations").

L.    Debtor filed a voluntary petition under Chapter 11, Title 11, of the United States Code (the "Bankruptcy Code") on April 9, 2021 (the "Petition Date") which is pending before the above-captioned bankruptcy court (the "Court").  Since the Petition Date, the Debtor has remained in possession of its assets as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

M.    Debtor has asserted that it requires the use of "Cash Collateral" (defined below) for the purpose of funding its ongoing operations in conjunction with the attempted reorganization of Debtor or sale of Debtor's assets and has requested that Lender consent to Debtor's use of Cash Collateral.  Lender is willing to so consent subject to the terms and subject to the conditions set forth in this Stipulation, to which terms and conditions are acceptable to Debtor.

N.    Debtor's use of Cash Collateral may result in a reduction in the value of the Pre-Petition Collateral without a corresponding reduction in the obligations owed to Lender by Debtor pursuant to the Loan Documents.

O.    Based upon the various acknowledgments, representations, warranties and covenants contained herein, Lender is willing to consent to Debtor's use of Cash Collateral

commencing upon the date this Stipulation is approved by the Court for the purposes and for the term set forth herein and otherwise in accordance with the terms and subject to the conditions contained in this Stipulation.

**STIPULATION**

NOW, THEREFORE, Lender and Debtor hereby stipulate as follows:

1. Acknowledgment of Pre-Petition Obligations and Loan Documents. Lender asserts, and subject to the provisions of Paragraph 2 below, Debtor hereby acknowledges, represents, warrants and agrees, that:

a. All of the provisions contained in Recitals A through O are true and correct and are expressly incorporated herein by reference, and Debtor acknowledges that such Recitals are relied upon by Lender in agreeing to the terms of this Stipulation;

b. The Loan Documents are valid and enforceable agreements in accordance with their terms;

c. Lender has a duly perfected, valid, first-priority security interest in and lien on the Pre-Petition Collateral to secure the Pre-Petition Obligations, which security interest and lien is unavoidable;

d. The Pre-Petition Obligations are valid, enforceable, allowable and unavoidable, and are now due and payable in full by Debtor without counterclaim, right of offset or recoupment, claim or other defense of any kind, and the Pre-Petition Obligations are not, and shall not be, subject to claims of subordination or re-characterization; and

e. All revenues and cash generated and received by Debtor from all Locations, whether prior to, on, or after the Petition Date, is Lender's Cash Collateral (as defined below), upon which Lender has a valid and perfected security interest. Lender asserts that its security interest in Cash Collateral is senior to the security interest, if any, of any other entity in Cash Collateral.

2. Objection by Parties in Interest. No later than fourteen (14) calendar days prior to the final hearing on approval of this Stipulation (the "Challenge Period"), any party in interest with standing to appear in this proceeding (other than Debtor) may file and serve upon Debtor and Lender any objection to the Pre-Petition Obligations or to Lender's lien on and security interest in the Pre-Petition Collateral. If no objections are timely filed by a party with standing and served within the Challenge Period, the Pre-Petition Obligations shall be deemed valid, enforceable, allowable and unavoidable, and not subject to subordination or recharacterization, and Lender's lien on and security interest in the Pre-Petition Collateral shall be deemed valid, enforceable, unavoidable, perfected and first in priority. In addition, the claim of Lender shall be deemed allowed in an amount of not less than the Pre-Petition Obligations plus all amounts to which Lender is entitled under the Loan Documents on and after the Petition Date (collectively, the "Claim Amount"), and Debtor hereby waives any right it may have to seek reconsideration of such allowance.

3. Release Regarding Pre-Petition Obligations. Debtor is aware of no grounds for and does not assert any pre-petition claims or causes of action against Lender. In consideration for the accommodations provided hereunder, but subject to the rights of other parties in interest to object to the Pre-Petition Obligations or to Lender's security interest in and lien on the Pre-Petition Collateral during the Challenge Period, and to become effective upon entry of the Final Order, Debtor hereby irrevocably and unconditionally releases and forever discharges Lender, and its respective attorneys, accountants, consultants, agents, servants,

members, officers, directors, shareholders, employees, predecessors, parents, subsidiaries, affiliates, successors and assigns, and all persons acting by, through, under, or in concert with any of them, from any and all charges, complaints, claims, and liabilities of any kind, including, without limitation, claims for the recovery of preferential transfers, fraudulent conveyances, or other avoidance actions under federal or state law, including all attorneys' fees, interest, expenses, and costs actually incurred or of any nature whatsoever, known or unknown, suspected or unsuspected, which in any way arise from or relate to the Loan Documents or the Pre-Petition Obligations. Debtor agrees that Lender's claim as to the Pre-Petition Obligations is allowed in an amount of not less than the Pre-Petition Obligations (which include all of Lender's pre-petition and post-petition fees, costs and expenses, including, without limitation, attorneys' fees, costs and expenses), and Debtor waives any right to seek reconsideration of such allowance of claim. Debtor further waives any right to seek to surcharge any of Lender's collateral under Section 506(c) of the Bankruptcy Code or under any other legal or equitable basis.

4. Definition of Cash Collateral. Debtor has requested that Lender consent to Debtor's use of Cash Collateral which Debtor represents is necessary to fund its ongoing operations. For purposes of this Stipulation, "Cash Collateral" shall have the meaning ascribed to it pursuant to 11 U.S.C. § 363(a), and shall include the proceeds, products, rents and profits of and from all Pre-Petition Collateral and Adequate Protection Collateral (as defined below), including without limitation, all revenues and cash generated and received by Debtor from all Locations, whether prior to, on, or after the Petition Date.

5. Approved Budget. The Budget attached hereto as **Exhibit B** (the "Budget") was prepared by Debtor and enumerates, on a weekly basis through July 14, 2021 (the "Budget Period"), Debtor's projected collections and cash expenses of operations. The only cash expenses of Debtor's operations that Lender approves of (collectively, "Approved Expenses")

are those expenses set forth in the Budget. Lender does not consent to the payment of any insiders except as set forth in the Budget.

6. Use of Cash Collateral. Subject to the terms and conditions set forth in this Stipulation (and contingent upon Debtor's compliance with this Stipulation), and the conditions precedent that the Interim Order (defined below) and the Final Order (defined below) are timely entered, Lender consents to Debtor's use of Cash Collateral to pay only the Approved Expenses set forth in the Budget from the date this Stipulation is approved and entered as an order by the Court until the earlier to occur of (a) the date upon which an Event of Default (defined below) occurs, or (b) the expiration of the Budget Period; except that at any time, if for any reason Lender believes that Debtor should not be entitled to continue to use Cash Collateral, Lender may, without limiting any of Lender's other rights set forth herein, notice a hearing to determine whether Debtor's authority to use Cash Collateral under this Stipulation should be revoked for the first date available on the Court's calendar that is at least seven (7) days after Lender provides notice to Debtor in accordance with the notice paragraph below. It is expressly understood and agreed between Debtor and Lender that Lender's consent to use of Cash Collateral is expressly limited to the duration of the Budget Period and that there is no other or further consent or commitment being given to use of Cash Collateral. For the avoidance of doubt, Debtor's right to continue to use Cash Collateral shall be contingent upon Debtor's compliance with each and every provision of this Stipulation. Lender acknowledges that Debtor shall be presumptively allowed to use the Cash Collateral only as specified in the Budget to pay reasonable fees and expenses to its legal counsel and other professionals whose employment is approved by the Bankruptcy Court in connection with this Stipulation, any transaction approved by Lender, or Debtor's ordinary course of business. For all expenses set forth in the Budget, and notwithstanding anything to the contrary in this Stipulation, (i) Debtor shall be authorized to use, and shall actually use, Lender's Cash Collateral only for expenses set forth in the Budget that Debtor actually incurs (both as to amount, subject to the variances set forth below, and type), and

(ii) prior to using Lender's Cash Collateral, Debtor shall use the proceeds of PPP loans except to the extent, if at all, that the use of PPP loan proceeds is prohibited by applicable law for such use or nullifies the forgiveness of Debtor's PPP loan.

7.      Budget Variances.  To the extent that Debtor's actual sales in a given week exceed projected sales in the Budget for the same week, the line items for variable operating expenses for that week, i.e., line item expenses whose amount varies with the level of Debtor's operations, shall be increased by an amount equal to the percent by which actual sales exceed projected sales for that week.  For example, if projected sales in a given week are $100 and actual sales that week are $110, that is a 10% increase, and the line items for Debtor's variable expenses would increase by 10% for that week.  For avoidance of doubt, such upward adjustment of budgeted operating expenses shall be limited to actual operating expenses that typically vary when sales vary (such as cost of goods sold, labor, and rent where rent is determined as a percentage of sales), and shall not apply to costs that typically do not vary when sales vary (such as fixed rent, insurance, overhead, general and administrative expenses, and professional fees).  In addition to the foregoing, Debtor shall not deviate from any Budget expense item set forth in the Budget by more than 10% on a weekly basis, with the aggregate Budget expense item variance capped cumulatively at 5% (except for salaries, as to which Debtor may not increase at all), without obtaining the prior written consent of Lender in Lender's sole and absolute discretion.  Debtor and Lender recognize that the timing of expenditures may need to vary from the Budget and therefore the actual expenditures may vary from week to week so long as in the aggregate the amount Debtor spends in any month is consistent with the Budget for such week (subject to the variances discussed above).

8.      Budget Amendments.  Debtor may request that Lender agree to an amendment of the Budget from time to time.  If Lender approves the proposed amended Budget in writing and in its sole and absolute discretion, the amended Budget shall govern.  Upon

expiration of the Budget Period, Debtor shall immediately cease its use of Cash Collateral, unless the Budget Period is extended by written agreement between Debtor and Lender (entered into in Lender's sole and absolute discretion).

9. Deposit of Cash Collateral. Debtor has a pre-petition deposit account, known as the "#3900 account" (the "Pre-Petition Cash Collateral Account"). Debtor has another pre-petition deposit account into which Debtor has deposited $2 million in proceeds of a PPP loan (the "Pre-Petition PPP Account"). Debtor has additional pre-petition deposit accounts (the "Other Pre-Petition Accounts"). Debtor shall open four (4) post-petition debtor-in-possession deposit accounts (collectively, the "DIP Accounts"): (i) a DIP Operating Cash Collateral Account; (iii) a DIP Operating PPP Account; (iii) a DIP Payroll Account; and (iv) a DIP Tax Account. Upon opening the DIP Accounts, Debtor shall transfer: (i) all funds in the Pre-Petition Cash Collateral Account and the Other Pre-Petition Accounts, which funds are Lender's Cash Collateral, into the DIP Operating Cash Collateral Account, and (ii) all funds in the Pre-Petition PPP Account into the DIP Operating PPP Account. Immediately thereafter, Debtor shall close the Other Pre-Petition Accounts and the Pre-Petition PPP Account. Debtor shall be entitled post-petition to maintain the Pre-Petition Cash Collateral Account for the sole purpose of accepting as deposits all funds received by Debtor post-petition. Post-petition (i) Debtor shall ensure that all funds collected or received by Debtor continue to be deposited into the Pre-Petition Cash Collateral Account, and (ii) on a daily basis, Debtor shall transfer all funds from the Pre-Petition Cash Collateral Account into the DIP Operating Cash Collateral Account. Other than making such transfers to the DIP Operating Cash Collateral Account, Debtor shall not make any transfers, payments or withdrawals from the Pre-Petition Cash Collateral Account. Debtor shall not transfer any funds between the DIP Operating Cash Collateral Account and the DIP Operating PPP Account. Subject to clause (ii) of the last sentence of Section 6 above, Debtor shall pay its expenses under the Budget (except payroll and taxes) out of the DIP Operating PPP Account and the DIP Operating Cash Collateral Account. Until the $2 million in PPP loan funds

have been exhausted, Debtor shall transfer funds from the DIP Operating PPP Account to the DIP Payroll Account and the DIP Tax Account to make payments of payroll and taxes under the Budget.  Once the $2 million in PPP loan funds have been exhausted, Debtor shall transfer funds from the DIP Operating Cash Collateral Account to the DIP Payroll Account and the DIP Tax Account to make payments of payroll and taxes under the Budget.   As soon as Debtor receives them or they otherwise becomes available to Debtor, Debtor shall deliver to Lender bank statements showing the balance of the Pre-Petition Cash Collateral Account and the DIP Accounts as of the Petition Date.  Subject to this Stipulation, no deposits shall be made into the Pre-Petition Collateral Account or the DIP Operating Cash Collateral Account except for Cash Collateral.  Under no circumstances shall any Cash Collateral generated by the Pre-Petition Collateral or Adequate Protection Collateral (defined below) or any funds in the Pre-Petition Cash Collateral Account or the DIP Operating Cash Collateral Account be commingled with the proceeds of Debtor's PPP loan.

10.     Adequate Protection Liens; Superpriority Claim; Costs and Expenses. As adequate protection for Debtor's use of Cash Collateral as well as the imposition of the automatic stay under Section 362 of the Bankruptcy Code:

a.     Debtor hereby grants to Lender replacement liens upon and security interests in the DIP Operating Account, the Pre-Petition Collateral, and all of Debtor's hereafter acquired assets that are proceeds, products, offspring or profits of the Pre-Petition Collateral (collectively, the "Adequate Protection Collateral") to secure the Pre-Petition Obligations, which shall be deemed to be effective *nunc pro tunc* from the Petition Date.  The replacement liens shall have the same priority and validity as Lender's pre-petition liens.  Debtor acknowledges and shall not contest the validity, perfection and priority of Lender's liens upon and security interests in the Pre-Petition Collateral and the Adequate Protection Collateral.  The Adequate Protection Collateral shall not include any avoidance causes of action which belong to

Debtor's estate, including, without limitation, any avoidance causes of action arising under Sections 544, 545, 547, 548 or 549 of the Bankruptcy Code.

b. Debtor acknowledges and agrees that to the extent there is a decrease in the aggregate value of Lender's interest in the Pre-Petition Collateral, Adequate Protection Collateral, and Cash Collateral (a "Diminution Claim") from that existing on the Petition Date which results in less than full payment of the Pre-Petition Obligations, as additional adequate protection, Lender's Diminution Claim shall be entitled to administrative priority status pursuant to Sections 364(c) and 507(b) of the Code with priority and super-priority over any and all other priority claims, administrative expenses, or other claims against Debtor whatsoever, heretofore or hereafter arising or incurred in Debtor's bankruptcy case, or in any superseding cases or cases under Chapter 7 of the Code, including, without limitation, any administrative expenses of the kind specified in or authorized pursuant to Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) and 726 of the Bankruptcy Code; provided that there shall be a carve out from such super-priority status for the carve out set forth in paragraph 19 below.

c. Debtor's grant to Lender hereunder of adequate protection, liens on the Adequate Protection Collateral, and super-priority status, shall not be subject to any rights or claims of Debtor's account debtors (except for the carve-out for professional fees set forth in Section 19 below), including but not limited to any rights of setoff, recoupments or counterclaims, and shall not be subject to surcharge under Bankruptcy Code Section 506(c) or otherwise.

d. To the greatest extent permitted under the Bankruptcy Code, all fees, costs and expenses incurred by Lender in connection with the preparation and approval of this Stipulation, the preservation and protection of its rights hereunder and the collection of the indebtedness owed by Debtor to Lender including, without limitation, all filing fees and

attorneys' fees, costs and expenses incurred in connection with the foregoing, and all insurance premiums and other costs and expenses incurred by Lender to adequately insure the Pre-Petition Collateral and the Adequate Protection Collateral, and all such other expenses, fees and costs incurred by Lender in connection with this bankruptcy case, the Loan, and the enforcement of Lender's rights in the collection of the outstanding balance of the Loan or the preservation of Lender's collateral, whether incurred pre-petition or post-petition, shall constitute a part of the indebtedness owing to Lender, and payment of the same by Lender shall constitute an advance made on behalf of the estate hereunder ("Post-Petition Costs and Expenses"), all of which shall be paid as permitted under Section 506(b) of the Bankruptcy Code.

e. All Adequate Protection Collateral and all Pre-Petition Collateral shall secure all Indebtedness provided for in this Stipulation. For the purpose of this Stipulation, "Indebtedness" shall mean all of Debtor's obligations to Lender arising under this Stipulation and the Loan Documents including, without limitation, the Pre-Petition Obligations and the Post-Petition Costs and Expenses.

11. Perfection of Adequate Protection Liens. The post-petition liens and security interests granted to Lender pursuant to this Stipulation are perfected by operation of law upon the Court's approval of this Stipulation *nunc pro tunc* from the Petition Date without further action by Lender. Nonetheless, Lender may, but shall not be required to, file any Uniform Commercial Code financing statements and record any additional documents in any jurisdiction or take any other or further action to validate or perfect the security interests and liens granted to it pursuant to and in accordance with this Stipulation. If Lender deems it necessary or convenient, Debtor shall execute and deliver to Lender, or shall have executed and delivered to Lender, all in form and substance satisfactory to Lender, any other documents, instruments or writings to evidence the terms of this Stipulation, the use of Cash Collateral and/or Lender's liens and security interests, and Lender may request from time to time the

execution and delivery of Uniform Commercial Code financing statements, continuation statements, amendments to financing statements, and any other instruments and/or documents relating to the use of Cash Collateral and/or the security interests and liens granted hereunder. Debtor shall execute all financing statements, amendments and other documents desired by Lender for the perfection of the security interests and liens granted hereunder and Debtor agrees to a lifting of the automatic stay for the limited purpose of carrying out the purposes of this Paragraph. Furthermore, Debtor irrevocably authorizes the filing of a carbon, photographic or other reproduction of this Stipulation as a financing statement, and agrees that such filing is sufficient as a financing statement subject to applicable state law. Nothing in this Paragraph shall limit or otherwise derogate the perfection of Lender's security interests in and lien on the Adequate Protection Collateral by operation of law as provided for in this Stipulation. All of the security interests in and liens on the Adequate Protection Collateral granted hereunder are hereby deemed to be effective on and after the Petition Date, shall continue in full force and effect and shall survive the termination of this Stipulation and the dismissal or conversion of this case.

12. Adequate Protection Payments. As additional adequate protection for Debtor's use of Cash Collateral as well as the imposition of the automatic stay under Section 362 of the Bankruptcy Code, and as a further condition to Lender's entry into this Stipulation:

a. Commencing May 1, 2021 and continuing each month throughout the Budget Period, Debtor shall make monthly interest payments to Lender on the first day of each month as provided under the Loan Documents for actual days elapsed in the preceding month, in immediately available funds as set forth in the Budget, representing Debtor's regular monthly debt service payments on the Loans under the Loan Documents; provided however, that Lender does not waive any accrued or accruing default interest to which it is entitled under the Loan Documents, and reserves its right to claim interest at the default rate provided for in the

Loan Documents. Lender shall be entitled to continue to accrue interest at the default rate, and Debtor acknowledges and agrees that the Claim Amount includes such default interest; and

b. Without limiting anything set forth in this Stipulation, Lender's agreement to accept the foregoing payments shall not constitute (1) an admission by Lender that such payments would satisfy the requirements of Sections 361, 362 or 1129 of the Bankruptcy Code, (2) a waiver by Lender, or cure by Debtor, of the Existing Events of Default, (3) an admission by Lender that Debtor is in compliance with the terms and conditions of the Loan Documents, or (4) an agreement to accept the foregoing payments as adequate protection beyond the Budget Period.

13. Debtor Covenants. As additional adequate protection for Debtor's use of Cash Collateral as well as the imposition of the automatic stay under Section 362 of the Bankruptcy Code, and as a further condition to Lender's entry into this Stipulation:

a. At Lender's request, Debtor shall execute and deliver or cause to be delivered to Lender and/or file with the appropriate offices, such documents, pleadings, instruments, agreements, financing statements, amendments and/or other things deemed necessary by Lender, in its sole discretion, to implement the substance and intent of this Stipulation.

b. Debtor shall not use any Cash Collateral to pay any personal expenses of any employee, shareholder, officer or director of Debtor, or any expenses of any nature whatsoever of any affiliated entity or person except, if at all, as expressly provided under the Budget. For avoidance of doubt, Debtor is authorized to use Cash Collateral to reimburse employees, shareholders, officers or directors of Debtor only for business expenses of Debtor incurred under the Budget.

c.    On or before one (1) business day after execution by Debtor, Debtor shall provide Lender with a copy of any agreement of sale regarding all or a portion of Debtor's assets other than in the ordinary course of its business or any financing or equity commitment or agreement regarding the refinancing of indebtedness owed to Lender and any other documents that materially affect such commitment or agreement (collectively a "Transaction").  Nothing herein shall permit Debtor to consummate any such Transaction without notice and a hearing as required by the Bankruptcy Code.

d.    On or before one (1) business day after execution by Debtor, Debtor shall provide Lender with a fully-up-to-date copy of any lease that the Debtor is a party to as a landlord or tenant.  Debtor shall notify Lender at least fifteen (15) business days before executing any amendment, modification, or supplement to such a lease, providing sufficient time for Debtor and Lender to discuss any such amendment in good faith. Debtor shall not waive any of its rights as a tenant without Lender's written consent in Lender's sole and absolute discretion. Notwithstanding anything to the contrary in this paragraph, Debtor shall include with its first-day motions a motion to allow Debtor to reject as of the Petition Date the leases with respect to the restaurant locations listed on **Exhibit A** hereto as "Closed" excepted for the Terminated Locations (as the leases for the Terminated Locations were terminated prior to the Petition Date).

e.    Debtor shall notify Lender of any proposed material transaction within one (1) business day after receiving the proposal, including but not limited to any transaction or any amendment of a lease (whether a party as a tenant or a landlord), and engage with good-faith discussion with the Lender on the possible pursuit and consummation of such material transaction.

f.    Debtor shall comply with the dates set by the Bankruptcy Court in all scheduling orders and to the extent not set forth in scheduling orders, dates set by the

Bankruptcy Court to file and obtain approval of a disclosure statement, and dates to file and obtain confirmation of a plan of reorganization or liquidation, which dates may be extended only by mutual consent of Debtor and Lender or by the Bankruptcy Court order after notice and a hearing.

g.      To obtain Lender's consent prior to seeking to retain a financial advisor or investment banker, provided that Lender consents to Debtor's retention of Capital Insight as financial advisor conditioned upon (i) the Court's approval of the retention of Capital Insight, and (ii) Capital Insight's compensation being subject to the Budget.

h.      To obtain Lender's consent prior to circulating marketing materials toward effectuating a plan of reorganization or sale under Bankruptcy Code Section 363.

i.      To negotiate in good faith with Lender with respect to any plan of reorganization or any Bankruptcy Code Section 363 sale of assets proposed by Debtor.  Without limiting the foregoing, Debtor (i) shall provide to Lender any proposed plan of reorganization no fewer than sixty (60) days prior to filing it (provided that Debtor and Lender may agree to fewer days), and (ii) shall not file a proposed plan of reorganization to which Lender does not consent without first having attempted in good faith to reach agreement on the terms thereof with Lender.

j.      Lender shall have the right, upon two (2) business days' notice to Debtor, to inspect the Pre-Petition Collateral from time to time during the entire term of this Stipulation.  Without limiting the generality of the foregoing, such inspection rights shall include, among other things, the right to (1) inspect and examine all of the Debtor's books and records, (2) monitor all cash flows including all receipts and disbursements and (3) conduct appraisals, valuations and environmental investigations of the Pre-Petition Collateral.

k.      Debtor shall maintain all of its deposit and disbursement accounts as set forth in paragraph 9 above.

l.      Debtor shall not make any payment, repayments, distributions, or other forms of consideration to, or for the benefit of any affiliated entity or person prior to repayment in full of the obligations owed to Lender except as expressly set forth in the Budget; provided that consistent with Debtor's pre-petition procedure, Debtor may transfer funds to its non-debtor affiliate Platinum Corral Management to fund Debtor's payroll for management set forth in the Budget.

m.      Debtor shall deliver to Lender copies of the following documents and reports:

(1)      In the same form provided by Debtor to Lender prior to the Petition Date, and by Wednesday of each week for the prior week, weekly financial and operating statements, certified in writing by an officer, authorized agent, or accountant of Debtor, that such statements present fairly and accurately such information contained therein regarding the financial condition of Debtor; provided that such statements shall also include a comparison of actual results to projections set forth in the Budget covering at least the prior four (4) weeks on a rolling basis (except that during the first three (3) weeks of the Budget, the comparison shall include only the first week after the first week, only the first two weeks after the second week, and only the first three weeks after the third week);

(2)      To be provided at the same times required under the Loan Documents, semi-annual financial statements (i.e., balance sheets and profit and loss statements) and annual tax returns; provided that any required financial statements or tax returns that are delinquent as of the Petition Date shall be provided no later than May 15, 2021;

(3) On the date they become available to Debtor, copies of the bank statements for the bank accounts described in paragraph 9 above; and

(4) Upon the earlier of being filed with the Court or provided to the Bankruptcy Administrator, Bankruptcy Administrator Operating Reports for the Debtor.

n. Debtor shall promptly, and in any event within two (2) days of Lender's request, furnish Lender with proof of property, casualty and liability insurance which (i) are acceptable to Lender, (ii) fall within the guidelines of the Office of the Bankruptcy Administrator and (iii) are consistent with the coverage required in the Loan Documents.

14. Reservation of Rights. Without limiting anything set forth in this Stipulation, Lender is not agreeing that the adequate protection provided for in this Stipulation is adequate to protect its interests; Lender reserves the right to seek additional adequate protection and/or relief from the automatic stay.

15. Events of Default. The occurrence of any of the following shall constitute an event of default hereunder (an "Event of Default"):

a. Debtor shall be in breach of its agreements or undertakings hereunder including, but not limited to, all payment requirements and reporting provisions contained herein;

b. Debtor shall furnish or knowingly make any false, inaccurate or incomplete representation, warranty, certificate, report or summary in connection with or under this Stipulation;

c.       Debtor shall contest the Claim Amount or any lien or security interest of Lender, or shall seek to have the Court annul, modify or amend any part of this Stipulation without notice and a hearing;

d.       the appointment of a trustee or an examiner in Debtor's case;

e.       the dismissal of Debtor's Chapter 11 case without payment of all of the Pre-Petition Obligations;

f.       if there is any motion made, adversary proceeding commenced or any relief sought pursuant to which a party in interest seeks to invalidate, subordinate or avoid the Claim Amount (or any portion thereof), any portion of Lender's lien on or security interest in the Pre-Petition Collateral or the Adequate Protection Collateral or any party in interest seeks any reduction or subordination of the Pre-Petition Obligations or the Claim Amount by reason of avoidance, invalidation, offset, recoupment or otherwise;

g.       except as permitted herein, the use of Cash Collateral under Section 363(c) of the Bankruptcy Code without Lender's prior written consent;

h.       any party in interest seeks relief from the automatic stay applicable under Section 362 of the Bankruptcy Code in Debtor's Chapter 11 case to exercise its rights as lienholder or secured party against any of the Pre-Petition Collateral or Adequate Protection Collateral, unless otherwise consented to by Lender in writing;

i.       Golden Corral Franchising Systems, Inc. or any of its affiliates seeks relief from the automatic stay applicable under Section 362 of the Bankruptcy Code in Debtor's Chapter 11 case to exercise any of their rights under or terminate the Franchise

Agreements between them and Debtor with respect to the restaurant locations listed on **Exhibit A** hereto as "Open" or "To be Open";

j.      an interim order acceptable to Lender in its sole and absolute discretion and in form and substance attached hereto as **Exhibit C** approving this Stipulation ("Interim Order") is not entered by the Court within ten (10) days following the filing of a motion seeking approval of the Court of this Stipulation (or such later time agreed to by Lender or further court order), or a final order acceptable to Lender in its sole and absolute discretion and in form and substance attached hereto as **Exhibit D** ("Final Order") is not entered by the Court within sixty (60) days following the filing of a motion seeking approval of the Court of this Stipulation (or such later time agreed to by Lender or further court order);

k.      the entry of an order by the Court modifying the Final Order to which Lender does not consent, or priming Lender's lien or security interest in either the Pre-Petition Collateral or the Adequate Protection Collateral under Section 364(d) of the Bankruptcy Code or otherwise;

l.      Debtor's Chapter 11 case is converted to a case under Chapter 7 of the Bankruptcy Code;

m.      Debtor shall sell any of its assets, without Lender's written consent (and in Lender's sole and absolute discretion), and without order of the Court after notice and a hearing;

n.      Debtor's breach of paragraph 13(i) above;

o. Without Lender's prior written consent, Debtor's filing of a motion to abandon the Pre-Petition Collateral or any other portion of Lender's collateral or to reject any leases or executory contracts with respect to the Pre-Petition Collateral other than those leases for the restaurant locations listed on **Exhibit A** hereto as "Closed" (except for the leases with respect to the Terminated Locations, which leases were terminated before the Petition Date);

p. Debtor's failure to maintain insurance in amounts and types satisfactory to Lender or as required under the Loan Documents; or

q. Debtor's failure to cause all applicable post-petition taxes to be paid on or before their due dates, or Debtor's failure to provide Lender with evidence thereof.

16. Remedies. Upon the occurrence of an Event of Default, this Stipulation shall immediately terminate; and

a. All Indebtedness, whether created prior to or after the commencement of the Debtor's Chapter 11 case, shall immediately become due and payable notwithstanding the terms stated in any agreement, note, contract or other instrument;

b. Debtor's right to use Cash Collateral under this Stipulation shall terminate; and

c. Lender shall have the right to provide notice to Debtor that an Event of Default has occurred. Debtor shall have five (5) business days from (i) the date that the notice is sent if sent by facsimile or (ii) the date after the notice is sent if sent by overnight delivery service to (a) cure the Event of Default to Lender's satisfaction and in Lender's sole and absolute discretion, or (b) contest that an Event of Default has occurred. If Debtor does neither

of the foregoing, then after the expiration of five (5) business days Lender shall have the right to have a hearing on a motion filed by Lender for relief from the automatic stay under Bankruptcy Code Sections 105 and 362 with respect to the Pre-Petition Collateral, the Adequate Protection Collateral, and the Cash Collateral occur on the first date available on the Court's calendar within seven (7) days after Lender files a motion for relief from the automatic stay.  Debtor agrees that any uncured Event of Default shall constitute "cause" for relief from the automatic stay under Bankruptcy Code Section 362(d)(1).  Notwithstanding the foregoing, with respect to an Event of Default under Section 15(f) or 15(h) herein, prior to Lender filing a motion for relief from the automatic stay, Lender and Debtor shall meet and confer.

17.      Survival.  Debtor's representations and warranties, acknowledgments and waivers set forth in this Stipulation shall survive the termination hereof and the dismissal or conversion of this case.

18.      Right to Credit Bid.  Lender shall have the right to credit bid up to the full amount of the Claim Amount in any sale of the Pre-Petition Collateral or the Adequate Protection Collateral pursuant to Section 363(k) of the Bankruptcy Code, a plan of liquidation or reorganization under Section 1129 of the Bankruptcy Code, or, in the event Debtor's case is converted into a Chapter 7 case, a sale or disposition by a Chapter 7 trustee under Section 725 of the Bankruptcy Code.  Debtor agrees that any sale of all or part of the Pre-Petition Collateral or the Adequate Protection Collateral that does not include an unqualified right to credit bid will not result in Lender receiving the indubitable equivalent of its claims and interests.

19.      Carve-Out For Professional Fees.  Lender agrees to a carve out from Lender's Pre-Petition Collateral of up to an aggregate amount of $240,000 for payment of accrued, allowed and unpaid legal fees of Smith Anderson and other professionals approved by

the Bankruptcy Court in connection with their Chapter 11 representation of the Debtors in accordance with the Budget.

20. Relief From Stay With Respect to Pre-Petition Collateral and Adequate Protection Collateral at Terminated Locations and other Closed Locations. Lender shall have relief from the automatic stay under Bankruptcy Code Sections 362(d)(1) and (2) to exercise Lender's non-bankruptcy rights and remedies under the Loan Documents and applicable non-bankruptcy law as follows:

(a) immediately with respect to Pre-Petition Collateral and Adequate Protection Collateral located or formerly located at the Terminated Locations and not currently located at Locations listed as "Open" or "To Be Open" on **Exhibit A**; and

(b) with respect to Pre-Petition Collateral and Adequate Protection Collateral currently located at Locations listed as "Closed" on **Exhibit A** (other than the Terminated Locations), as orders are entered by the Court authorizing the rejection of the leases associated with such Locations.

21. No Prejudice. This Stipulation is without prejudice to Lender's right to seek any relief or take any other action which it deems appropriate in these bankruptcy proceedings including, but not limited to, appropriate remedies upon Debtor's breach or default under any provision of this Stipulation (including, without limitation, relief under Sections 362(d)(1), 362(d)(2) or 362(d)(3) of the Bankruptcy Code, because the payments provided for hereunder are insufficient under Section 363(d)(3)(B) of the Bankruptcy Code or because Lender believes that its interests are not adequately protected for any reason), or in any legal actions pending in other jurisdictions to the extent that the same is in accordance with Debtor's rights under the Bankruptcy Code.

22. Rights Cumulative. The rights, powers and remedies of Lender provided in this Stipulation and the Loan Documents are cumulative and not exclusive of any right, power or remedy provided by law or equity. No failure or delay on the part of Lender in the exercise of any other right, power or remedy or shall constitute a waiver of such right or remedy. Lender, in its sole and absolute discretion, may temporarily waive any Event of Default without affecting Lender's rights under this Stipulation.

23. Integration. This Stipulation constitutes the sole agreement of Lender and Debtor with respect to the subject matter hereof and supersedes all oral negotiations and prior writings with respect to the subject matter hereof. Subject to Paragraph 2 above, each of the stipulations, admissions and agreements contained in this Stipulation shall be binding on all parties in interest (including any Chapter 7 trustee or committee).

24. Written Amendments. No amendment or extension of this Stipulation, and no waiver of any one or more of the provisions hereof shall be effective unless set forth in writing and signed by Lender and Debtor, which amendments or extensions, if any, shall only be entered into in Lender's sole and absolute discretion.

25. Successors and Assigns. This Stipulation: (i) shall be binding upon Debtor and Lender and, where applicable, their respective predecessors, successors, agents and permitted assigns (including, as to Debtor, any trustee appointed or elected in this case or in a case under Chapter 7); and (ii) shall inure to the benefit of Debtor and Lender and, where applicable, their respective predecessors, successors, agents and permitted assigns; provided, however, that Debtor may not assign its rights hereunder without the written consent of Lender or order of the Court after notice and a hearing, and any such assignment or attempted assignment by Debtor shall be void and of no effect with respect to Lender.

26. No Conflict. No subsequent Order of the Court or proposed plan of reorganization may conflict with the terms or provisions of this Stipulation and the Order; and this Stipulation and the Order shall survive entry of and govern with respect to any conflict with any subsequent orders or plans of reorganization.

27. Court Approval. The performance of Lender's and Debtor's obligations under this Stipulation is expressly conditioned upon timely entry of the Interim Order and the Final Order.

28. Authorization. Debtor and Lender represent and warrant to each other that this Stipulation has been duly and validly executed and delivered and that the Stipulation constitutes a valid and legally binding obligation subject only to approval by the Court.

29. No Challenge. Debtor shall not in any manner challenge or attempt to avoid or subordinate Lender's claims against Debtor under this Stipulation or the Loan Documents, nor attempt to avoid the validity, perfection or priority of Lender's security interests in and lien on the Adequate Protection Collateral. Debtor shall not seek to modify the provisions of this Stipulation under a Chapter 11 plan.

30. Effect of Stipulation; Loan Documents. To the extent of any inconsistencies between the terms and provisions of this Stipulation and the Loan Documents, the terms of this Stipulation shall govern. In all other respects, the Loan Documents shall remain in full force and effect and Lender shall continue to have all of the rights, remedies, powers and privileges provided in the Loan Documents as modified hereby, applicable law and equity.

31. No Third Party Beneficiaries. No rights are intended to be created hereunder for the benefit of any third party, donee, creditor or incidental beneficiary.

32. No Waiver. Except as expressly provided herein, the parties' execution of this Stipulation shall not be deemed to constitute a waiver of any of Lender's rights or remedies under the Bankruptcy Code or other applicable law. By way of amplification, but not limitation, Lender is not waiving any of its rights and remedies with respect to any of its claims, rights, security interests or remedies under or contained in the Loan Documents. In addition, Lender does not waive any right to seek additional adequate protection in the future or to object to, or refuse any request of Debtor or any trustee appointed in the bankruptcy case, for consent to, the use, sale or other disposition of any collateral, and/or the use, sale or other disposition of other goods. Debtor further acknowledges and agrees that Lender does not waive any right it may have to claim that all Pre-Petition Obligations made by it to the Debtor shall continue to accrue interest at the default rate set forth in the Loan Documents.

33. Notices. Reports and notices required hereunder shall be delivered by hand or Federal Express or other overnight courier, and email:

To Lender at the following address:

Pacific Premier Bank
333 S. Grand Ave., Suite 3580
Los Angeles, CA 90071
Attn: Salvador Lopez
Email: slopez@ppbi.com

With copies to:

Sheppard Mullin Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071
Attn:  Alan Feld and Ted Cohen
Email: afeld@sheppardmullin.com; tcohen@sheppardmullin.com

To Debtor at the following address:

Platinum Corral, L.L.C.
521 New Bridge Street
Jacksonville, NC 28540
Attn: Louis W. Sewell, III
Email: bsewell@platinumcorral.com

With copies to:

Smith Anderson
Wells Fargo Capitol Center
150 Fayetteville Street, Suite 2300
Raleigh, North Carolina 27610
Attn: Gerald A. (Jeb) Jeutter, Jr. and Anna Osterhout
Email: jjeutter@smithlaw.com; aosterhout@smithlaw.com

Debtor shall give notice to Lender of all future filings of any nature by Debtor with the Court in this case, or with any other court or governmental agency and shall serve copies thereof upon Lender in accordance with the immediately preceding paragraph hereof.

34.    Governing Law; Venue.  This Stipulation shall be governed by and construed in accordance with the internal laws of the State of New York and the parties agree that the Bankruptcy Court shall have jurisdiction to interpret and enforce this Stipulation.

35. Counterparts. This Stipulation may be executed in any number of counterparts and by the different parties on separate counterparts. Each such counterpart shall be deemed an original, but all such counterparts together shall constitute one and the same Stipulation.

IN WITNESS WHEREOF, Debtor and Lender have caused this Stipulation to be executed.

Dated: April 21, 2021

PACIFIC PREMIER BANK,
the Lender

By ______________________________

Its Vice President

Dated: April __, 2021

PLATINUM CORRAL, L.L.C,
the Debtor

By ______________________________

Its ______________________________

35. Counterparts. This Stipulation may be executed in any number of counterparts and by the different parties on separate counterparts. Each such counterpart shall be deemed an original, but all such counterparts together shall constitute one and the same Stipulation.

IN WITNESS WHEREOF, Debtor and Lender have caused this Stipulation to be executed.

Dated: April __, 2021

PACIFIC PREMIER BANK,
the Lender

By ______________________________

Its ______________________________

Dated: April 21 2021

PLATINUM CORRAL, L.L.C,
the Debtor

By Lars W. Sewell III

Its Pres/CEO

The undersigned guarantor consents to the foregoing Stipulation and agrees that neither the entering into, nor the performance of the foregoing Stipulation shall impair or otherwise affect his guaranties or the obligations of Debtor under the Loan Documents.

Louis W. Sewell, III

Dated: April [24], 2021

Approved as to form and content:

Gerald A. (Jeb) Jeutter, Jr. , N.C. Bar No. 17724
Anna Osterhout, N.C. Bar No. 19841
By: */s/ Gerald A. Jeutter, Jr.*
Smith Anderson
Wells Fargo Capitol Center
150 Fayetteville Street, Suite 2300
Raleigh, North Carolina 27610
Telephone: (919) 821-1220
 Email: jjeutter@smithlaw.com
 Email: aosterhout@smithlaw.com
*Attorneys for Debtor Platinum Corral, L.L.C.*

Alan Feld, admitted *Pro Hac Vice*
Theodore A. Cohen, admitted *Pro Hac Vice*
By: */s/ Alan Feld*
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street
Los Angeles, CA  90071
Telephone:  (213) 620-1780
Email: afeld@sheppardmullin.com
Email:  tcohen@sheppardmullin.com
*Attorneys for Pacific Premier Bank*

# EXHIBIT A – LOCATIONS

| Location | | | Address | | | | Open | Current Status | Segment - Operations | Government Restrictions - Occupancy | Total Seats Capacity | Available Seats | Open & Operating | Curbside/ Take Out |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 559 | Jacksonville | 2055 N. Marine Blvd. | Jacksonville | NC | 28546 | 2006 | Open | Buffet | 50% | 500 | 250 | 250 | Yes |
| 2 | 576 | Burlington | 3108 Garden Road | Burlington | NC | 27215 | 1993 | Open | Buffet | 50% | 400 | 200 | 200 | Yes |
| 3 | 586 | Hickory | 1053 Lenoir Rhyne Blvd. | Hickory | NC | 28602 | 1999 | Open | Buffet | 50% | 400 | 200 | 200 | Yes |
| 4 | 589 | Concord | 1540 Hwy 29 N. | Concord | NC | 28027 | 1995 | Open | Buffet | 50% | 375 | 188 | 188 | Yes |
| 5 | 2454 | Asheboro | 1070 East Dixie Dr. | Asheboro | NC | 27203 | 2002 | Open | Buffet | 50% | 375 | 188 | 188 | Yes |
| 6 | 764 | Colonial Heights | 2501 Conduit Road | Colonial Heights | VA | 23834 | 1995 | Open | Buffet | 50% | 520 | 260 | 260 | Yes |
| 7 | 774 | Roanoke | 1441 Town Square Blvd. | Roanoke | VA | 24012 | 1996 | Open | Buffet | 50% | 400 | 200 | 200 | Yes |
| 8 | 894 | Lynchburg | 4005 Wards Road | Lynchburg | VA | 24502 | 2000 | Open | Buffet | 50% | 375 | 188 | 188 | Yes |
| 9 | 2607 | Charlotte | 7701 N. Tryon Street | Charlotte | NC | 28262 | 2009 | Open | Buffet | 50% | 370 | 185 | 185 | Yes |
| 10 | 749 | Glen Allen | 4050 Gaskins Road | Glen Allen | VA | 23060 | 1995 | Open | Buffet | 50% | 400 | 200 | 200 | Yes |
| 11 | 714 | Richmond | 11 South Providence Road | Richmond | VA | 23236 | 1993 | To Open - Feb | Buffet | 50% | 400 | 200 | 0 | N/A |
| 12 | 2623 | Greenville | 504 Greenville Blvd. SW | Greenville | NC | 27834 | 2010 | To Open - March | Buffet | 50% | 400 | 200 | 0 | N/A |
| 13 | 2508 | Sumter | 2385 Walmart Blvd. | Sumter | SC | 29150 | 2007 | Closed | Buffet | 50% | 370 | 185 | 0 | N/A |
| 14 | 656 | Lexington | 1507 Cotton Grove Rd. | Lexington | NC | 27292 | 1998 | Closed | Buffet | 50% | 280 | 140 | 0 | N/A |
| 15 | 630 | Winchester | 1501 Bypass Road | Winchester | KY | 40391 | 1997 | Closed | Buffet | 50% | 285 | 143 | 0 | N/A |
| 16 | 634 | Elizabethtown | 1835 N. Dixie Hwy | Elizabethtown | KY | 42701 | 1997 | Closed | Buffet | 50% | 365 | 183 | 0 | N/A |
| 17 | 781 | Ashland, KY | 21 Russell Plaza | Ashland | KY | 41101 | 1996 | Closed | Buffet | 50% | 365 | 183 | 0 | N/A |
| 18 | 867 | Cross Lanes | 412 New Goff Mountain Road | Cross Lanes | WV | 25313 | 1999 | Closed | Cafeteria | 50% | 365 | 183 | 0 | N/A |
| 19 | 2438 | Zanesville | 3761 North pointe Drive | Zanesville | OH | 43701 | 2002 | Closed | Cafeteria | 50% | 375 | 188 | 0 | N/A |
| 20 | 2490 | Parkersburg | 1302 Garfield Avenue | Parkersburg | WV | 26101 | 2004 | Closed | Cafeteria | 50% | 375 | 188 | 0 | N/A |
| 21 | 2603 | Danville | 195 Holt-Garrison Parkway | Danville | VA | 24540 | 2009 | Closed | Buffet | 50% | 370 | 185 | 0 | N/A |
| 22 | 814 | Huntington | 5177 Rt. 60 East | Huntington | WV | 25705 | 1997 | Closed | Buffet | 50% | 365 | 183 | 0 | N/A |
| 23 | 827 | Gallipolis | 307 Upper River Road | Gallipolis | OH | 45631 | 1997 | Closed | Cafeteria | 50% | 280 | 140 | 0 | N/A |
| 24 | 2618 | Lancaster | 2296 North Memorial Drive | Lancaster | OH | 43130 | 2010 | Closed | Cafeteria | 50% | 365 | 183 | 0 | N/A |
| 25 | 722 | Chillicothe | 1660 N. Bridge Street | Chillicothe | OH | 45601 | 1994 | Closed | Cafeteria | 50% | 365 | 183 | 0 | N/A |
| 26 | 662 | Reidsville | 1566 Freeway Dr. | Reidsville | NC | 27320 | 1998 | Closed | Buffet | 50% | 280 | 140 | 0 | N/A |
| 27 | 2485 | Wake Forest | 11016 Capital Blvd. | Wake Forest | NC | 27587 | 2006 | Closed | Buffet | 50% | 375 | 188 | 0 | N/A |
| 28 | 2663 | Christiansburg | 2580 N. Franklin St. | Christiansburg | VA | 24073 | 2015 | Closed | Buffet | 50% | 365 | 183 | 0 | N/A |
| | | Total | | | | | | | | | 10,460 | 5,230 | 2,058 | |
| | | | | | | | | | | | % of Total | 50.00% | 19.67% | |

| Status Summary | |
|---|---|
| Open | 10 |
| To Open | 2 |
| Closed | 16 |
| **Total** | **28** |

**EXHIBIT B – BUDGET**

[See Attached]

| AUV per week | | 70,292 | 77,726 | 72,929 | 70,079 | 68,289 | 71,293 | 79,849 | 75,856 | 75,856 | 77,373 | 77,373 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| # stores open | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 |
| green is actual cash basis | balanced to bank | 90% | 111% | 92% | 95% | 100% | 104% | 112% | 95% | 100% | 102% | 100% |
| black is forecast accrual | out of bank | | easter4/4 | | 2,910,350 | | 2,808,488 | Mday 5/9 | 2,952,872 | | % of 2019> | 85% |
| 4/19/2021 | | PD4 W1 | PD4 W2 | PD4 W3 | PD4 W4 | PD5 W1 | PD5 W2 | PD5 W3 | PD5 W4 | PD6 W1 | PD6 W2 | PD6 W3 |
| Expense Description | | 31-Mar | 7-Apr | 14-Apr | 21-Apr | 28-Apr | 5-May | 12-May | 19-May | 26-May | 2-Jun | 9-Jun |
| | | Wk end | Wk end | Wk end | Wk end | Wk end | Wk end | Wk end | Wk end | Wk end | Wk end | Wk end |
| Bank beg balance (all accounts) | | 1,142,271 | 1,183,161 | 1,182,446 | 955,907 | 3,249,192 | 3,068,615 | 3,121,423 | 2,893,305 | 3,036,341 | 2,728,229 | 2,802,636 |
| LOC/AR | | 34,447 | 3,868 | 150,799 | 2,082,528 | - | - | - | - | - | - | - |
| Sales tax/misc | 8.5% | 70,291 | 77,898 | 73,163 | 68,978 | 62,081 | 64,812 | 72,590 | 68,960 | 68,960 | 70,339 | 70,339 |
| deposits (credits) | | 632,629 | 899,458 | 656,126 | 631,807 | 620,807 | 648,123 | 725,897 | 689,602 | 689,602 | 703,394 | 703,394 |
| Total Receipts | | 737,367 | [illegible] | 880,088 | 2,783,313 | 682,888 | 712,935 | 798,487 | 758,563 | 758,563 | 773,734 | 773,734 |
| OPERATING EXPENSES | | 38.4% | 59.7% | 70.5% | 6.9% | 38.5% | 38.5% | 38.5% | 38.5% | 38.5% | 38.5% | 38.5% |
| Food Cost/McLane | 39.5% | (268,315) | (377,819) | (493,134) | (44,979) | (243,246) | (239,011) | (249,527) | (279,470) | (265,497) | (265,497) | (270,807) |
| Utilites(Engie/New Market) | | (28,676) | (18,879) | (11,049) | (29,653) | (45,000) | (31,000) | (31,000) | (29,000) | (44,000) | (31,000) | (31,000) |
| GCF Royalties (ACH Tues)POS | | (22,832) | (30,367) | (30,043) | (30,148) | (35,371) | (36,405) | (36,269) | (40,546) | (44,757) | (46,396) | (45,639) |
| Mgmt +Office+Tax (th&f) | | (76,684) | (33,834) | (39,856) | (760) | (77,379) | (760) | (77,379) | (760) | (77,379) | (760) | (77,379) |
| Crew Pay+Tax | | (184,918) | (88,892) | (193,403) | (60,331) | (203,087) | (66,972) | (196,684) | (65,984) | (233,557) | (78,354) | (229,844) |
| Contract Labor | | - | - | - | - | - | - | - | - | - | - | - |
| Mgmt Bonus & Tax(3rd wedn) | | (1,608) | - | (71,851) | (29,695) | (1,671) | - | (89,639) | (39,441) | (1,522) | - | (90,948) |
| Monthly/Qtr PR tax/Vacation | | - | - | - | (7,043) | (17,738) | - | (500) | - | (10,000) | - | (1,000) |
| 401k | | (4,940) | - | (5,698) | (5,776) | (6,035) | - | (6,000) | (6,000) | (6,000) | - | (6,000) |
| garnishments | | - | (2,340) | - | (1,608) | - | (2,500) | - | (2,500) | - | (2,500) | - |
| ee expense (incl dental/vision) | | (788) | (297) | - | (2,553) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) |
| Credit card fees/gift crds | | (5,818) | (7,432) | (5,706) | (5,131) | (5,587) | (5,833) | (6,533) | (6,206) | (6,206) | (6,331) | (6,331) |
| Bank fees/Visa/Amex | | (1,799) | (828) | (20,063) | (2,500) | (10,000) | (8,500) | (60,000) | - | (13,000) | - | (8,500) |
| Rent | | (133,250) | (10,000) | | | | (124,250) | | | | (132,250) | |
| Sales tax | 10.0% | - | - | - | (182,230) | (80,101) | - | - | - | (279,239) | - | - |
| Property tax | | - | (186,408) | - | | - | | | (33,000) | - | - | (22,500) |
| Small vendor | 4.0% | [illegible] | (35,205) | (5,633) | (57,310) | (38,250) | (45,546) | (125,074) | (50,919) | (35,517) | (42,939) | (43,354) |
| Insurance GL Prop WC | | (9,645) | (9,946) | (181) | (20,703) | (5,000) | (11,000) | - | (20,000) | - | (7,500) | (3,500) |
| Health ins - ACS Rx + Med | | (2,020) | (319) | (297) | (4,608) | (10,000) | (10,000) | (10,000) | (18,500) | (10,000) | (10,000) | (10,000) |
| OPERATING EXPENSES (incl G&A) | | (669,930) | (724,480) | (876,902) | (485,028) | (782,465) | (585,777) | (892,604) | (596,327) | (1,030,675) | (627,527) | (850,802) |
| CF from Operations (incl Admin) | | [illegible] | [illegible] | [illegible] | 2,298,285 | (99,577) | 127,158 | (94,117) | 162,236 | (272,112) | 146,207 | (77,068) |
| Debt | | [illegible] | [illegible] | [illegible] | | | (12,050) | (75,000) | | | (9,500) | (2,550) |
| Mclane | | - | (10,000) | (15,492) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) |
| Capx/reopen store | | [illegible] | [illegible] | [illegible] | - | (27,000) | (10,000) | (50,000) | (14,200) | (27,000) | (10,000) | (50,000) |
| Prof Fees Corp | | [illegible] | [illegible] | [illegible] | - | (4,000) | (47,300) | (4,000) | | (4,000) | (47,300) | (4,000) |
| Other fees | | - | - | - | - | (45,000) | - | - | - | - | - | - |
| Non-operating cash out | | [illegible] | [illegible] | [illegible] | (5,000) | (81,000) | (74,350) | (134,000) | (19,200) | (36,000) | (71,800) | (61,550) |
| Bank end balance | | 1,183,164 | 1,172,902 | 955,907 | 3,249,192 | 3,068,615 | 3,121,423 | 2,893,305 | 3,036,341 | 2,728,229 | 2,802,636 | 2,664,018 |
| Total Float | | [illegible] | [illegible] | | | | | | | | | |
| Ending cash consolidated | | 1,183,164 | 1,182,446 | 955,907 | 3,249,192 | 3,068,615 | 3,121,423 | 2,893,305 | 3,036,341 | 2,728,229 | 2,802,636 | 2,664,018 |
| Period change in cash | | | | added PPP 4/15 | 2,105,921 | | | | (212,851) | | | |
| BOOK BALANCE | | | | | | | | | | | | |
| Cash - Concentration #3900 | | 1,183,164 | 1,182,446 | 955,907 | 3,213,907 | 3,068,615 | 3,121,423 | 2,893,305 | 3,036,341 | 2,728,229 | 2,802,636 | 2,664,018 |
| Cash PPP BBT #4054 | | 2,000,000 | 2,000,000 | - | - | - | - | - | - | - | - | - |
| DIP Operating #7290 | | | | | | | | | | | | |
| DIP PPP2 #7312 | | | | 2,000,004 | | | | | | | | |
| DIP Payroll ZBA #7282 | | | | | | | | | | | | |
| DIP Tax #7304 | | | | | | | | | | | | |
| xxxx | | - | - | - | - | - | - | - | - | - | - | - |
| Total cash | | 3,183,164 | 3,182,446 | [illegible] | 3,213,907 | 3,068,615 | 3,121,423 | 2,893,305 | 3,036,341 | 2,728,229 | 2,802,636 | 2,664,018 |

| | | | | | | |
|---|---|---|---|---|---|---|
| *AUV per week* | 79,695 | 74,116 | 74,116 | 76,339 | 74,049 | |
| *# stores open* | 10 | 10 | 10 | 10 | 10 | |
| green is actual cash basis | 103% | 93% | 100% | 103% | 97% | |
| black is forecast accrual | 3,102,976 | | 87% | gross sales> | 2,986,206 | |
| **4/19/2021** | PD6 W4 | PD7 W1 | PD7 W2 | PD7 W3 | PD7 W4 | **Notes 4/19** |
| **Expense Description** | 16-Jun *Wk end* | 23-Jun *Wk end* | 30-Jun *Wk end* | 7-Jul *Wk end* | 14-Jul *Wk end* | |
| **Bank beg balance (all accounts)** | 2,664,018 | 2,749,493 | 2,296,356 | 2,392,250 | 2,211,848 | |
| *LOC/AR* | - | - | - | - | - | P4 collected $189 AR, PPP2 $2m rec'd 3/31 |
| *Sales tax/misc* | 72,450 | 67,378 | 67,378 | 69,399 | 67,318 | |
| deposits (credits) | 724,496 | 673,781 | 673,781 | 693,995 | 673,175 | sales adjustment 4/14 |
| **Total Receipts** | 796,946 | 741,160 | 741,160 | 763,394 | 740,493 | |
| **OPERATING EXPENSES** | *38.5%* | *38.5%* | *38.5%* | *38.5%* | *38.5%* | paid usfoods/produce/shuler 4/6 instead of 4/8, so $100k shifted to wk end 4/7 |
| Food Cost/McLane | (270,807) | (278,931) | (259,406) | (259,406) | (257,188) | 4/7 higher food for Easter |
| Utilites(Engie/New Market) | (30,000) | (45,000) | (32,000) | (32,000) | (31,000) | includes closed stores expense |
| GCF Royalties (ACH Tues)POS | (45,639) | (46,990) | (43,744) | (43,744) | (45,038) | P2 and P3 adv down from 2.4% to 1%, P4 sat 4.5% P5 at 5.5%, P6 at 6.4%2nd tues OLO |
| Mgmt+Office+Tax (th&f) | (760) | (77,379) | (760) | (77,379) | (760) | |
| Crew Pay+Tax | (77,109) | (235,602) | (79,040) | (222,348) | (74,594) | 4/4 net payroll 15.5%, june begin 16.5% |
| Contract Labor | - | - | - | - | - | |
| Mgmt Bonus & Tax(3rd wedn) | (40,017) | (1,522) | - | (102,522) | (46,632) | |
| Monthly/Qtr PR tax/Vacation | - | (10,500) | - | (1,500) | - | |
| 401k | (6,000) | (6,000) | - | (6,000) | (6,000) | |
| garnishments | (2,500) | - | (2,500) | - | (2,500) | |
| ee expense (incl dental/vision) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | |
| Credit card fees/gift crds | (6,520) | (4,716) | (4,716) | (4,858) | (4,712) | |
| Bank fees/Visa/Amex | (68,000) | (3,000) | (10,000) | (8,500) | (68,500) | visa dependent on contract sales, estimated high |
| Rent | - | | (132,250) | | - | Spirit at 6%/ Store at 6% beg May (estimated) per month, no pay spirit for april |
| Sales tax | - | (342,907) | - | - | - | added va prepay due 6/25 |
| Property tax | - | (3,800) | (2,400) | - | - | paid open store prop tax on 4/2 |
| Small vendor | (51,618) | (44,949) | (41,949) | (43,189) | (54,421) | 2/28 decreased from 5% of sales to 4.5%, CEC expenses ? |
| Insurance GL Prop WC | - | (20,000) | (7,500) | (10,000) | - | includes closed stores expense |
| Health ins - ACS Rx + Med | (18,500) | (10,000) | (10,000) | (10,000) | (18,500) | paid work comp and GL audits for 2019/2020 policy year on 2/4 |
| OPERATING EXPENSES (incl G&A) | (621,470) | (1,135,297) | (630,266) | (825,446) | (623,845) | |
| CF from Operations (incl Admin) | 175,476 | (394,137) | 110,894 | (62,051) | 116,648 | |
| Debt | (75,000) | - | - | (12,050) | (75,000) | |
| Mclane | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | |
| Capx/reopen store | (10,000) | (50,000) | (10,000) | (50,000) | (10,000) | capx added $50k for 714 reopen by 7/4, 2623 open P8, have not added sales for these stores |
| Prof Fees Corp | | (4,000) | | (51,300) | - | |
| Other fees | - | - | - | - | (13,000) | bk utility deposit estimated to pay 4/15 $20k Q2 bk fee |
| Non-operating cash out | (90,000) | (59,000) | (15,000) | (118,350) | (103,000) | |
| Bank end balance | 2,749,493 | 2,296,356 | 2,392,250 | 2,211,848 | 2,225,496 | |
| Total Float | | | | | | |
| Ending cash consolidated | 2,749,493 | 2,296,356 | 2,392,250 | 2,211,848 | 2,225,496 | |
| **Period change in cash** | (286,848) | | | | (523,998) | <<<includes closed store expense about $55k pp |
| **BOOK BALANCE** | | | | | | |
| **Cash - Concentration #3900** | 2,749,493 | 2,296,356 | 2,392,250 | 2,211,848 | 2,225,496 | **Work in progress to show each bank accounts book balance which will total to ending cash above** |
| **Cash PPP BBT #4054** | - | - | - | - | - | |
| **DIP Operating #7290** | | | | | | |
| **DIP PPP2 #7312** | | | | | | |
| **DIP Payroll ZBA #7282** | | | | | | |
| **DIP Tax #7304** | | | | | | |
| **xxxx** | - | - | - | - | - | |
| **Total cash** | 2,749,493 | 2,296,356 | 2,392,250 | 2,211,848 | 2,225,496 | |

# EXHIBIT C – INTERIM ORDER

[See Attached]

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Case No. 21-00833-5-JNC |
| PLATINUM CORRAL, L.L.C. | ) | Chapter 11 |
| Debtor. | ) | |

**ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL, SETTING FINAL HEARING, AND GRANTING LIMITED RELIEF FROM STAY**

UPON CONSIDERATION of the Motion (the "***Motion***") of Debtor and Debtor-in-Possession Platinum Corral, L.L.C. ("***Debtor***") for entry of an order authorizing the interim and final use of cash collateral pursuant to its *Stipulation For Use of Cash Collateral, Providing Adequate Protection, and Granting Limited Relief From the Automatic Stay* with Pacific Premier Bank ("***Cash Collateral Stipulation***")[1] [Dkt. No. 15], and setting a final hearing, and having heard the arguments and the offers of proof made by various parties in open court on April 16, 2021; and due and proper notice of the Motion having been provided; and for good cause shown:

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED on an interim basis *nunc pro tunc* to April 9, 2021, and the Cash Collateral Stipulation is approved in accordance with the terms thereof and hereof.

[1] Undefined terms herein have the same definitions set forth in the Stipulation.

2.   Pacific Premier Bank is granted, and the Debtor is authorized and directed to provide to Pacific Premier Bank, the adequate protection set forth in the Cash Collateral Stipulation, and, through the next interim hearing or final hearing on the Motion, whichever comes first, Debtor (i) may use cash collateral, pursuant to the Budget attached to the Cash Collateral Stipulation as Exhibit B, and (ii) shall carry out its other obligations under the Cash Collateral Stipulation.

3.   Relief from the automatic stay under Bankruptcy Code Sections 362(d)(1) and (2) is granted to Lender to exercise Lender's non-bankruptcy rights and remedies under the Loan Documents and applicable non-bankruptcy law as follows:

a.     immediately with respect to Pre-Petition Collateral and Adequate Protection Collateral located or formerly located at the Terminated Locations and not currently located at Locations listed as "Open" or "To Be Open" on **Exhibit A** to the Cash Collateral Stipulation; and

b.     with respect to Pre-Petition Collateral and Adequate Protection Collateral currently located at Locations listed as "Closed" on **Exhibit A** (other than the Terminated Locations) to the Cash Collateral Stipulation, as orders are entered by the Court authorizing the rejection of the leases associated with such Locations.

4.   For the purposes of this Interim Order, liens on Adequate Protection Collateral shall not attach to Debtor's real property leaseholds (the "Leaseholds") as to which the lessor is STORE Master Funding III, LLC ("STORE"), but liens on Adequate Protection Collateral shall attach to the proceeds of the Leaseholds.  Entry of this Interim Order is without prejudice to Lender's right to assert for purposes of entry of a final order that liens on the Adequate Protection Collateral attach to the Leaseholds.

5.   If Lender seeks access to the premises that are the subject of the Leaseholds (collectively, the "Premises") to retrieve Lender's collateral after Debtor no longer has possession of the Premises, Lender shall coordinate with STORE to obtain access to the Premises.  Until then, Lender shall coordinate with Debtor to obtain access to the Premises.  STORE reserves its right to object to any surrender, or any effective date of rejection of the lease, of any of the Premises subject to STORE's master lease to the extent any of Lender's collateral remains in the Premises. Lender reserves its rights with respect to its collateral located at the Premises, including such rights under applicable law and/or any Landlord's Subordination or similar agreements between Lender and STORE.

6.   Approval of Debtor's waiver of rights to seek to surcharge any of Lender's collateral under Section 506(c) of the Bankruptcy Code, or under any other legal or equitable basis, is reserved for entry of a final order on approval of the Motion and the Cash Collateral Stipulation. Entry of this Interim Order is without prejudice to STORE's right to object to entry of a final order approving the Motion and the Cash Collateral Stipulation.

7.   As adequate protection pursuant to Bankruptcy Code Sections 361(2) and 363(e), creditor McLane Foodservice Distribution, Inc. (f/k/a Meadowbrook Meat Company, Inc.) ("McLane") is granted a replacement lien on inventory provided and shipped to Debtor by McLane post-petition, and cash collateral related thereto, to the same validity, extent and priority of McLane's pre-petition lien, to compensate McLane for the post-petition decrease in value of inventory provided and shipped to Debtor by McLane, and cash collateral related thereto, as of the Petition Date, with all parties reserving their rights as to the validity, extent and priority of McLane's pre-petition lien and the amount of the post-petition decrease in value of Debtor's inventory provided and shipped to Debtor by McLane, and cash collateral related thereto, as of the Petition Date.

8. Approval of the release set forth in paragraph 3. of the Cash Collateral Stipulation is deferred, and shall be considered at the second interim hearing on May 5, 2021 (see below).

9. The Budget attached hereto as Exhibit A replaces the Budget attached to the Cash Collateral Stipulation.

10. A second interim hearing (the "Second Interim Hearing") on the Motion shall be held on May 5, 2021 at 1:00 p.m. (Eastern Time). You may join the Second Interim Hearing by using the ZoomGov Meeting link below, with the Meeting ID and Passcode provided:

**Join ZoomGov Meeting**
**https://www.zoomgov.com/j/1604993000?pwd=TVhLRkFsVmN4RTNlNURWM0FpNHIyZz09**

**Meeting ID: 160 499 3000**
**Passcode: 04613040**

11. A tentative final hearing on the Motion is set for June 8, 2021, at 12:30 p.m. (Eastern Time).

[End of Document]

**EXHIBIT D – FINAL ORDER**

[See Attached]

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Case No. 21-00833-5-JNC |
| PLATINUM CORRAL, L.L.C. | ) | Chapter 11 |
| Debtor. | ) | |

**FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL**

UPON CONSIDERATION of the Motion (the "***Motion***") [Dkt. No. __] of Debtor and Debtor-in-Possession Platinum Corral, L.L.C. ("***Debtor***") for entry of an order authorizing the interim and final use of cash collateral pursuant to its *Stipulation For Use of Cash Collateral, Providing Adequate Protection, and Granting Limited Relief From the Automatic Stay* with Pacific Premier Bank ("***Cash Collateral Stipulation***") [Dkt. No. __], and setting a final hearing, and having heard the arguments and the offers of proof made by various parties in open court at the final hearing on _____ __, 2021; and due and proper notice of the Motion having been provided; and for good cause shown:

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED on a final basis and the Cash Collateral Stipulation is approved in accordance with the terms thereof and hereof.

2. The Debtor is authorized to provide to Pacific Premier Bank the adequate protection set forth in the Cash Collateral Stipulation, and (i) use cash collateral, pursuant to the Budget attached to the Cash Collateral Stipulation as Exhibit B, and (ii) carry out its other obligations under the Cash Collateral Stipulation.

Done and entered this _____ day of ____, 2021.

**BY THE COURT:**

______________________________

______________________________

United States Bankruptcy Court Judge

**CERTIFICATE OF SERVICE**

I, Anna B. Osterhout, of the law firm of Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., certify:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age:

That on April 27, 2021, I electronically filed the foregoing **Stipulation for Use of Cash Collateral, Providing Adequate Protection, and Granting Limited Relief from the Automatic Stay** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties listed below. I further certify that I have mailed the document to the non CM/ECF participants as set out below by first class mail.

I certify under penalty of perjury that the foregoing is true and correct.

DATED: April 27, 2021

SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.

By: /s/ Anna B. Osterhout
Anna B. Osterhout
NC State Bar No. 19841
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800
Email: aosterhout@smithlaw.com
ATTORNEYS FOR DEBTOR

**RECIPIENTS:**

**VIA CM/ECF:**

Kirstin E. Gardner
U. S. Bankruptcy Administrator
434 Fayetteville Street, Suite 640
Raleigh, NC 27601

Alan Feld, Esq.
Ted Cohen, Esq.
Counsel for Pacific Premier Bank
Sheppard Mullin
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071

John A. Northen, Esq.
Counsel for Golden Corral
Northen Blue
1414 Raleigh Rd #435
Chapel Hill, NC 27517

Cindy G. Oliver, Esq.
Counsel for Dogwood State Bank
Longleaf Law Partners
4509 Creedmoor Road, Suite 302
Raleigh, NC 27612

Jonathan Edwards, Esq.
Christopher K. Coleman, Esq.
Counsel for McLane FoodService Distribution Inc.
Alston & Bird
One Atlantic Center
1201 W. Peachtree St., Suite 4900
Atlanta, GA 30309

James B. Angell, Esq.
Joseph H. Stallings, Esq.
Counsel for Truist Bank f/k/a BB&T
Howard, Stallings, From, Atkins
Angell & Davis, P.A.
P. O. Box 12347
Raleigh, NC 27605

Jill C. Walters, Esq.
Counsel for Pacific Premier Bank
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601

Craig Solomon Ganz, Esq.
Michael DiGiacomo, Esq.
Counsel for STORE Master Funding III, LLC
Ballard Spahr LLP
1 E. Washington Street, Suite 2300
Phoenix, Arizona 85004

Caren D. Enloe, Esq.
Landon G. Van Winkle, Esq.
Counsel for STORE Master Funding III, LLC
Smith Debnam Narron Drake Saintsing & Myers, LLP
P.O. Box 176010
Raleigh, NC 27619-6010

Pamela W. McAfee, Esq.
Charles N. Anderson, Jr., Esq.
Counsel for LBC2 Trust
Ellis & Winters LLP
Post Office Box 33550
Raleigh, NC 27636

Jack Spencer, Esq.
Felton Perrish, Esq.
Counsel for SBBH Golden Corral, LLC
Alexander Ricks PLLC
1420 E. 7th Street, Suite 100
Charlotte, NC 28204

**VIA FIRST CLASS MAIL:**

Platinum Corral, L.L.C., Debtor
521 New Bridge St.
Jacksonville, NC 28540-5430

North Carolina Dept. of Revenue
Office Services Division
P. O. Box 1168
Raleigh, NC 27602-1168

Internal Revenue Service
Attn: Officer/Manager
P. O. Box 7346
Philadelphia, PA 19101

Office of the United States Attorney
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601

North Carolina Dept. of Commerce
Division of Employment Security
P. O. Box 26504
Raleigh, NC 27611-6504

US Small Business Administration
Attn: Officer/Manager
2 20th St. N, Suite 325
Birmingham, AL 35203

1053 Lenoir Rhyne Boulevard LLC
Mr. and Mrs. Russell Wachtier
740 Saint Nicholas Ave., Room 2
New York, NY  10031

ARC Cafeusa001 LLC Zanesville OH
DEPT 880044 (ID 082070)
Attn: Officer/Manager
PO Box 29650
Phoenix, AZ 85038

BRINKS INC.
Attn: Officer/Manager
7373 Solutions Center
Chicago, IL 60677

Chillicothe Bowling Lanes Inc.
Attn: Officer/Manager
1680 N Bridge St
Chillicothe, OH  45601

Dogwood State Bank FKA Sound Bank
Attn: Officer/Manager
5401 Six Forks Rd., Suite 100
Raleigh, NC 27609

Douglas Ray Higdon
391 Foxwood Dr.
Richmond, KY  40475

Greenup County Sheriff
Attn: Officer/Manager
PO Box 318
Greenup, KY 41144

HP-Wakeforest GC, LLC
Holly Park Inv.
Attn: Officer/Manager
PO Box 19669
Raleigh, NC  27619

Noble Properties Inc.
Attn: Officer/Manager
4280 Professional Center Dr., Ste 100
Palm Beach Gardens, FL 33410

Northeast Bank
Attn: Loan Servicing Dept.
PO Box 171769
Boston, MA  02117

SBBH Golden Corral, LLC
Attn: Officer/Manager
101 S Kings Drive, Suite 200
Charlotte, NC  28204

Shuler Meats
Attn: Officer/Manager
124 Shuler Rd
Thomasville, NC  27360

STORE Master Funding III, LLC
Attn: Michael Bennett, Exec. VP
8501 E. Princess Drive, Suite 190
Scottsdale, AZ 85255

Sumter County Treasurer
Attn: Officer/Manager
PO Box 100140
Columbia, SC  29202

The Loan Source
Attn: Officer/Manager
353 E 83rd St.
New York, NY  10028

Toler Properties, LLC
Attn: Officer/Manager
330 Harper Park Dr., Suite G
Beckley WV  25801

US Foods Inc.
Attn: Officer/Manager
PO Box 602292
Charlotte, NC  28260

WSR Sumter c/o West Realty Group
Attn: Officer/Manager
875 Saint Nicholas Ave., Apt. 1
New York, NY  10032